**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION**

| | | |
|---|---|---|
| WILLIAM D. HENSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:13-cv-00139-TWP-DML |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff William D. Hensley ("Mr. Hensley") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). For the following reasons, the decision of the Commissioner is **AFFIRMED**.

**I.     BACKGROUND**

**A.     Procedural Background**

Mr. Hensley filed an application for DIB on July 7, 2010, and an application for SSI on July 31, 2010. These applications initially were denied on November 5, 2010. They were again denied after reconsideration on March 2, 2011. Thereafter, Mr. Hensley requested a hearing, which was held via video conference on May 7, 2012, before Administrative Law Judge Larry A. Temin ("the ALJ"). On May 23, 2012, the ALJ denied Mr. Hensley's applications for benefits. Mr. Hensley appealed the ALJ's decision, and on July 8, 2013, the Appeals Council denied his request for review, making the ALJ's decision the final decision of the Commissioner for purposes

of judicial review. *See* 20 C.F.R. § 416.1481. On September 9, 2013, Mr. Hensley filed this appeal, requesting judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.      Factual Background**

At the time of his alleged disability onset, Mr. Hensley was forty-nine years old. The highest level of education that he completed was the eighth grade. He lived at home with his wife and three minor children. His past work experience included automotive parts welder, forklift operator, and driver in the Army. Mr. Hensley was steadily employed until his last job ended as a result of being laid off in April 2009.

Regarding his physical limitations, Mr. Hensley testified that he can no longer work because of the pain in his back, arms, hands, and feet. He also stated that he has depression and problems with sleeping. Mr. Hensley testified that he has chronic pain in all of his joints, numbness in his left hand, a slight tremor in his right hand, pain in his right foot, migraines with vomiting and photosensitivity, worsening vision, and poor balance. He testified that he drives several times a week and takes care of his children. Most of the household chores are performed by his wife, and his cousin does his yard work.

Mr. Hensley alleged a disability onset date of January 22, 2009. In October 2010, Doctor William Garner ("Dr. Garner") at St. Catherine Physician Group, examined Mr. Hensley. Dr. Garner opined that Mr. Hensley appeared to have a great amount of pain with decreased movement in many joints, a slight tremor in his hands, and an inability to walk properly due to pain and discomfort. Dr. Garner also noted that due to the slight tremor, Mr. Hensley had difficulty effectively performing fine movements such as buttoning, zipping, and picking up coins. Dr. Garner did not have any x-rays to confirm osteoarthritis.

2

Mr. Hensley was treated at the Veterans Administration Medical Center ("VAMC") for major depression between July 2009 and January 2011. He reported that his depression was attributable to chronic back pain, not being able to work, and having financial stress. Scott Memorial Hospital emergency records show that Mr. Hensley was diagnosed with degenerative disc disease and disc height loss in September 2009.

In October 2010, Doctor Greg Lynch ("Dr. Lynch") conducted a psychological evaluation of Mr. Hensley. Dr. Lynch diagnosed Mr. Hensley with major depressive disorder and assigned a Global Assessment Functioning of 55 based solely on social functioning. Dr. Lynch opined that Mr. Hensley's capacity to understand, remember, and carry out simple instructions towards performance of simple repetitive tasks is limited due to his impairments. Dr. Lynch reported that Mr. Hensley would be slightly to moderately limited in work settings because of his impairments. However, a state agency "Psychiatric Review Technique" form was completed by Doctor Ken Lovko, which stated that Mr. Hensley's mental impairments were not severe and rated his functional limitations as mild.

In November 2010, a state agency reviewing medical expert, Doctor Robert Bond ("Dr. Bond"), completed a physical review and capacity assessment. Dr. Bond diagnosed Mr. Hensley with lower back pain. He also opined that Mr. Hensley could lift or carry ten pounds frequently and twenty pounds occasionally, sit or stand for a total of six hours in an eight-hour day, and occasionally perform all postural movements. Dr. Bond also reported that Mr. Hensley had no joint deformity noted in his examinations, had normal x-rays in both hands in July 2009, and had a weak grip.

## II. DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB or SSI only after he establishes that he

has a disability.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience.  *See* 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has implemented these statutory standards to determine disability by employing a "five-step sequential evaluation process."  *See* 20 C.F.R. § 404.1520.  At the first step, if the claimant is currently engaged in substantial gainful activity, then he is not disabled despite any medical conditions and other factors.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, then he is not disabled.  20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  At the third step, if the claimant's impairments, either singly or in combination, meet or medically equal the criteria for any of the conditions included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments"), and the impairment meets the twelve month duration requirement, then the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).  The Listing of Impairments is a list of medical conditions defined by criteria that the Social Security Administration has determined are disabling.  20 C.F.R. § 404.1525.  If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps.  Residual functional capacity is the "maximum that a claimant can still do despite his

mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p).

At step four, if the claimant has the residual functional capacity to perform his past relevant work, then he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his residual functional capacity and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

A person is disabled only if his impairments "are of such a severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The combined effect of all of the claimant's impairments shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the Court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The Commissioner's decision will be reversed only if it is not supported by substantial

evidence or if the Commissioner applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

In reviewing the decision, the Court's "role is extremely limited." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). In determining whether substantial evidence exists to support the Commissioner's decision, the Court will not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford*, 227 F.3d at 869. "[I]f the findings of the Commissioner of Social Security are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003).

While the Court's review of the ALJ's decision is deferential, the Court cannot uphold a decision if it "fails to mention highly pertinent evidence or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (internal citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to minimally articulate the justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. <u>THE ALJ'S DECISION</u>

At step one, the ALJ determined that Mr. Hensley met the insured status requirements of the Act through December 31, 2014, and that he did not engage in substantial gainful activity during the period from his alleged onset date of January 22, 2009. At step two, the ALJ determined Mr. Hensley had the following severe impairments: lumbar and cervical spine degenerative disc disease, headaches, obesity, major depressive disorder, and a history of a right foot crush injury

6

with posttraumatic degenerative changes in the fifth toe. He found that the impairments imposed a limitation on Mr. Hensley's ability to perform basic work activities. The ALJ determined that Mr. Hensley also had physical impairments that were not severe: high blood pressure, poor vision, hyperglycemia, and an injury to his fifth finger on his left hand, each of which would not prevent the performance of basic work activities. The ALJ found that Mr. Hensley's rheumatoid arthritis was not medically determinable because no diagnostic test results were able to confirm this diagnosis.

At step three, the ALJ determined that Mr. Hensley did not have an impairment or combination of impairments that met or medically equaled a Listed Impairment. The ALJ considered degenerative disc disease under Listing 1.04(A), *Disorders of the spine*, but determined that the record did not demonstrate evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, or motor loss accompanied by sensory or reflex loss to meet or medically equal this Listing.

The ALJ considered Listing 11.03 with regard to Mr. Hensley's allegations of frequent headaches but found that the medical evidence did not reflect treatment of severe enough headaches to meet a listing, and there was no record of three months of treatment as required as part of the comparative listing.

The ALJ considered Mr. Hensley's mental impairment under the "paragraph B" criteria of Listing 12.04, *Affective disorders*, in determining that his major depressive disorder did not meet or medically equal the criteria of the Listing because the mental impairment did not result in marked limitations in two categories as required by the Listing. The ALJ also considered the "paragraph C" criteria under this Listing but found that the criteria was not met because Mr. Hensley made his own decisions and functioned independently inside and away from his home.

The ALJ considered Mr. Hensley's right foot injury impairment under Listing 1.02(A) but found that Mr. Hensley was able to ambulate effectively, and thus the injury did not meet or medically equal the Listed Impairment.

At step four, after determining that Mr. Hensley's impairments did not meet or medically equal a Listed Impairment, the ALJ found that Mr. Hensley was unable to perform any of his past relevant work. But the ALJ determined that Mr. Hensley had the residual functional capacity to perform light work. He concluded that Mr. Hensley can lift, carry, push, or pull up to twenty pounds occasionally and ten pounds frequently. He also concluded that Mr. Hensley can stand or walk six hours in an eight-hour workday, stand or walk two hours at a time, and sit for six hours in an eight-hour workday. The ALJ also found that Mr. Hensley can never climb ladders, ropes, or scaffolds, or work at unprotected heights. Finally, the ALJ determined that Mr. Hensley's job should not require more than ordinary and routine changes in the work setting or duties. With these limitations, the ALJ found that Mr. Hensley could perform a significant number of jobs that existed in the national economy and therefore concluded that Mr. Hensley was not disabled.

## IV. **DISCUSSION**

Mr. Hensley makes two arguments on appeal: (1) the ALJ did not give proper weight to the opinion of an examining physician, Dr. Garner; and (2) the ALJ made a flawed credibility determination. The ALJ is required to "examine and weigh all the evidence including observations by treating and examining physicians, third-party testimony, the claimant's testimony and daily activities, functional restrictions, pain medication taken, and aggravating or precipitating factors to evaluate how much the claimant's impairment affects his ability to work." *Herron*, 19 F.3d at 334. An ALJ must minimally articulate his analysis of the evidence, and the ALJ's credibility

determinations will not be disturbed unless patently wrong. *Diaz v. Chater*, 55 F.3d 300, 307–08 (7th Cir. 1995).

**A.    Dr. Garner's Opinion**

Mr. Hensley argues that the ALJ failed to give weight to the opinion of State Agency examining physician, Dr. Garner. Mr. Hensley argues that the ALJ failed to discuss Dr. Garner's opinion. Specifically, he asserts that the ALJ gave significant weight to a non-examining physician and rejected Dr. Garner's (an examining physician) opinion.  Although the ALJ did not mention Dr. Garner by name in his order, he cited to Exhibit 7F, which is Dr. Garner's report, and discussed Dr. Garner's evaluation of Mr. Hensley ([Filing No. 16-2 at 15](Filing No. 16-2 at 15)).  The ALJ's order did not specifically explain the degree of weight that the ALJ gave to the opinion of Dr. Garner as an examining physician.  However, the ALJ specifically explained that he was giving great weight to the opinion of Dr. Lynch (another examining physician) and the objective medical records regarding Mr. Hensley's diagnosis of major depressive disorder.

Although the ALJ failed to specifically explain the degree of weight that he gave to Dr. Garner's opinion, the ALJ's order explains that Dr. Garner did not evaluate Mr. Hensley's work-related functional abilities, and therefore, the ALJ used the report only for purposes of determining the severity of Mr. Hensley's impairments.  The ALJ discounted Dr. Garner's opinion regarding Mr. Hensley's difficulty in performing fine finger movements because that opinion appeared to be based solely on Mr. Hensley's subjective complaints and because Dr. Garner did not have any x-rays to confirm any rheumatoid arthritis. The ALJ also noted that while Mr. Hensley appeared to have a large amount of pain and his gait was slow, he did not use an assistive device.

In *McKinzey v. Astrue*, the Seventh Circuit held that although an ALJ had committed error in failing to consider a state agency physician's opinion, the error was nevertheless harmless

9

because the court could determine the proper place of that evidence in the context of the other evidence and the outcome would be the same. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). "It would serve no purpose to remand this case to the ALJ for a statement of the obvious." *Id.*

Here, although the ALJ did not specifically explain the degree of weight that he gave to Dr. Garner's opinion, it is clear that he did consider the opinion. The record reflects that the ALJ found that some of Dr. Garner's opinions were not supported by objective medical evidence. Similar to *McKinzey*, it would serve no purpose to remand this case to the ALJ to specifically explain the weight given to Dr. Garner's opinion when it appears that he assigned the opinion little weight where the opinion relied solely on Mr. Hensley's subjective complaints. Upon review of the record and the ALJ's order, the ALJ did consider Dr. Garner's opinion as well as the opinions of other examining and non-examining physicians, the objective medical records, Mr. Hensley's testimony, and the third-party testimony. With all of this evidence and testimony in context, the ALJ determined that Mr. Hensley was not disabled. On judicial review, the Court does not reweigh the evidence or substitute its credibility judgment for that of the ALJ unless the ALJ's decision is unsupported by substantial evidence. In this case, the ALJ's decision was supported by substantial evidence.

**B.     Credibility Determination**

Next, Mr. Hensley argues that the ALJ made a flawed credibility determination. An ALJ's credibility determination will not be overturned unless it is "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). The ALJ's credibility decision is not only an analysis of Mr. Hensley's credibility but also an evaluation of his complaints of pain. Therefore, the ALJ must

consider SSR 96-7p, the Social Security Ruling promulgated by the Commissioner to assess and report credibility issues, as well as 20 C.F.R. §§ 404.1527, 404.1529(c)(3).

SSR 96-7p states there is a two-step process that the ALJ uses to determine an individual's credibility. The first step requires the ALJ to consider whether there are any medically determinable physical or mental impairments that could reasonably be expected to produce the type of pain or symptoms of which the claimant allegedly suffers. At this step, the ALJ does not determine the intensity, persistence, or functionally limiting effects of the individual's symptoms.

If the ALJ does find there is a physical or mental impairment that could produce the pain or symptoms the claimant alleges, the ALJ must then determine the extent to which the symptoms limit the individual's ability to do basic work activities. "For this purpose, whenever the individual's statements are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p.

Moreover, 20 C.F.R. § 404.1529(c)(3) states that when a claimant's subjective individual symptoms are considered, several factors are relevant, including: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

11

In consideration of all the evidence, the ALJ found Mr. Hensley's medically determinable impairments could possibly be expected to cause his alleged symptoms, but Mr. Hensley's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent that they were inconsistent with his residual functional capacity assessment. After a careful examination of the record, the Court concludes that the ALJ's credibility determination was not patently wrong.

Mr. Hensley asserts that the ALJ impugned his credibility because of his testimony regarding the care of his children. Although this would qualify as an activity of daily living that the ALJ can consider under SSR 96-7p, the ALJ cited inconsistencies within the testimony itself regarding the children's care in making the credibility determination. The ALJ noted that his testimony was inconsistent with other evidence and varied throughout his testimony. For instance, Mr. Hensley reported that the children were cared for by a babysitter, yet he declined to be included on a list for a pain group at VAMC because it was hard to find a babysitter. The ALJ noted that Mr. Hensley first testified that he cared for the three children while his wife worked. The ALJ also noted that Mr. Hensley testified that he can only lift two or three pounds, but the ALJ stated that because of the young ages of the children, it was reasonable to conclude that Mr. Hensley had to lift the children at times.

Mr. Hensley also alleges that the ALJ ignored the limitations that he has in his hands and failed to include these limitations in the residual functional capacity assessment. However, the residual functional capacity assessment noted that Mr. Hensley had normal bilateral hand x-rays in July 2009, that his history of frostbite in the left hand was in the remote past, and that he had a weak grip. The ALJ also noted this in his order and further noted that x-rays of the hands were unremarkable and Mr. Hensley had worked with the injury to his fifth finger on his left hand in

the past. Regarding the migraine headaches and back pain, the ALJ noted that Mr. Hensley stated that he did not take prescription medications because he could not afford them but later admitted he was not currently prescribed pain medications.

The ALJ ultimately concluded that the objective clinical and diagnostic testing did not support Mr. Hensley's subjective complaints of pain and that there were inconsistencies between his testimony and the evidence. All these facts eroded Mr. Hensley's credibility. The ALJ gave some weight to Mr. Hensley's third-party witnesses' reports. But these reports were not from disinterested individuals, and therefore, the reports could not override the objective evidence. Furthermore, the ALJ found that there were no supporting treatment records to show that Mr. Hensley could not work within the limitations identified in the residual functional capacity assessment.

The record shows that the ALJ considered numerous factors when making his credibility determination, and the decision was supported by substantial evidence. Therefore, the ALJ's decision was not patently wrong and should not be overturned.

## V. CONCLUSION

For the reasons discussed above, the final decision of the Commissioner of the Social Security Administration is **AFFIRMED**.

**SO ORDERED.**

Date: 02/02/2015

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

William Edward Jenner
JENNER, PATTISON, HENSLEY & WYNN, LLP
wjenner@wjennerlaw.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov